JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Vincent Colon, appeals from his conviction and sentence for robbery. He urges that (1) the court deprived him of his right to self-representation; (2) the court restricted his access to counsel; (3) the evidence was insufficient to support his conviction; (4) his conviction contravened the manifest weight of the evidence; (5) the indictment was insufficient; (6) the court erred by failing to instruct the jury about an element of the charge; (7) he did not have the effective assistance of counsel; and (8) the court erred by imposing a sentence that exceeded the statutory minimum term. We find no error in the proceedings below and affirm the trial court's judgment. However, we vacate the sentence pursuant to the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, and remand for resentencing.
 Procedural History {¶ 2} Appellant was charged with robbery in a one count indictment filed September 20, 2005. The case proceeded to a jury trial on November 14, 2005. At trial, the state presented the testimony of the victim, Samuel Woodie; Jennie Harris, Woodie's neighbor; Jerron Powell, Harris's son; and Patrolman Henry Steel, who intervened in the disturbance. Woodie testified that he is a 76 year old man living on East 114th Street in the City of Cleveland. On September 7, 2005 at approximately 9:00 p.m., the appellant returned a bench saw to Woodie which Woodie had loaned to his neighbor, Ms. Harris. Appellant asked to borrow $40 for Ms. Harris. Woodie gave him the money. Woodie testified that appellant returned at approximately 1:30 a.m. and said Ms. Harris wanted $40 more, which Woodie also gave to him.
 {¶ 3} The following morning, appellant rang Woodie's doorbell at approximately 9:30 a.m. and said Ms. Harris needed $20 more. He and appellant walked next door to Harris's house. As they approached her side door, appellant grabbed Woodie's left rear pants pocket, in which Woodie kept his wallet. Woodie and appellant struggled in the driveway. Harris came out and yelled at appellant to stop; she joined in the fight as well. Harris's son also joined. Woodie testified that they were all rolling around on the driveway. They rolled off of him and he got up. He went to the garage and got a brick, which he used to strike appellant in the head twice, rendering him unconscious. Police then arrived. In the course of the struggle, Woodie's wallet ended up on the ground, and he picked it up. Woodie said his knees and elbows were scraped and his hip hurt afterward, but he refused medical attention.
 {¶ 4} Jenny Harris testified that the appellant is her nephew. On the morning of September 8, 2005, she heard Woodie's voice outside her side door, so she opened it. Appellant and Woodie were standing there. Appellant then grabbed Woodie's left rear pants pocket. Woodie also grabbed the pocket, and Harris did as well. Harris yelled at appellant to let Woodie go. Woodie fell down; Harris and appellant fell down with him.
 {¶ 5} Harris said she got her arm around appellant's neck, but he pushed her away. Harris's son then came out and joined the fracas. Woodie's pocket ripped and his wallet fell out. Appellant grabbed it and put it in the front of his pants "in the crotch area." Harris reached into appellant's pants and got the wallet and returned it to Woodie. Woodie went and got a brick and hit appellant twice on the head with it. Police arrived and instructed Woodie to put the brick down.
 {¶ 6} Harris's son, Jerron Powell, testified that he went to the side door of his mother's home when he heard her screams. He saw appellant, Woodie and Harris "tussling on the ground." He then jumped on appellant's back and pulled him off. Woodie got up. In the course of the affray, appellant grabbed Woodie's wallet, which was lying on the ground, and put it in his shorts. Harris retrieved the wallet and gave it back to Woodie. As Powell "bear-hugged" appellant on the ground, Woodie went to the garage and got a brick which he used to hit appellant twice.
 {¶ 7} Patrolman Steel testified that he and his partner were patrolling on East 114th Street when he saw a disturbance and went to investigate. He saw an older man take a brick and hit another man on the head twice. Patrolman Steel instructed the older man to drop the brick and he did. All three persons at the scene said that appellant was trying to rob Woodie, so Steel handcuffed appellant, who was unconscious, and called EMS, who transported appellant to a hospital.
 {¶ 8} At the conclusion of the state's case, appellant moved for dismissal pursuant to Criminal Rule 29. The court denied the motion. Appellant then presented the testimony of Patrolman Steel's partner, Patrolman Leon Goodlow, and appellant.
 {¶ 9} At the conclusion of the trial, the jury returned a verdict finding appellant guilty of robbery. The court sentenced appellant to seven years' imprisonment.
 Law and Analysis {¶ 10} In his first assignment of error, appellant argues that the court deprived him of his right to represent himself. During voir dire, appellant asked if he could appear as co-counsel and represent himself. The court instructed him to "write up a motion and put out your reasons and what you want to do. Okay?" Appellant did not submit a written motion to the court.
 {¶ 11} At the conclusion of Ms. Harris's testimony, appellant again asked to be designated as "co-counsel" so that he could ask questions his attorney had not asked. The court advised appellant that he could not act as co-counsel, that he could either have an attorney represent him or he could represent himself. Appellant reiterated that he wanted his attorney to continue to represent him. The court allowed appellant a ten-minute recess to think about what he wanted. When proceedings resumed, counsel was still representing appellant.
 {¶ 12} To assert the right to self-representation, the defendant must clearly and unequivocally invoke his right to self-representation and must knowingly, intelligently and voluntarily waive the concomitant right to the assistance of counsel. State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶38; Godinez v. Moran (1993), 509 U.S. 389, 400-02. In this case, the appellant did not clearly and unequivocally inform the court that he wished to waive his right to counsel. Rather, he repeatedly asked to act as co-counsel, a role which the court correctly informed him he could not assume. State v. Martin,103 Ohio St.3d 385, 390, 2004-Ohio-5471, ¶ 32. Therefore, appellant did not invoke his right to self-representation.
 {¶ 13} Appellant claims the court erred by failing to inform him of his right to stand-by counsel. Once a defendant chooses to represent himself, "[a] trial court may — but is not required to — appoint stand-by counsel to aid a defendant if and when the defendant requests assistance * * *." State v. Watson (1998),132 Ohio App.3d 57, 65. Contrary to appellant's suggestion,Martin does not create a right to stand-by counsel, but rather recognizes that stand-by counsel may be appointed by the court at its discretion to assist a pro se defendant, "even over objection by the accused." Martin, at ¶ 28, quoting Faretta v.California (1975), 422 U.S. 806, 834 n. 46. Therefore, we reject this argument.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} Second, appellant contends that the court impermissibly restricted his access to counsel. During the direct examination of the first defense witness, the court called a recess, excused the jury and stated: "Now, the defendant, Mr. Colon, is going to have to remember, I told you a couple of times I don't want any temper tantrums. I had to bring in a second deputy. If you act up any more — I heard you screaming and yelling at your attorney in there. I am not allowing your attorney to be anywhere with you from now, as [sic] that's a court order, except here in this courtroom discussing privately here." At the conclusion of the day's proceedings, the court reiterated: "* * * * [Defense counsel] is not to go in with the defendant any further on this trial whether he wants to or not. He has to be out here and have the conference in front of the deputies in open court, privately, but out here."
 {¶ 16} Contrary to appellant's arguments, these orders did not restrict appellant's access to his attorney, but only affected the manner in which he could consult with counsel. Appellant could consult with counsel in person in the courtroom with deputies present. There were no restrictions on the length of any consultation. There were also no restrictions on appellant's ability to consult telephonically with his attorney. Therefore, this case is not analogous to Geders v. UnitedStates (1976), 425 U.S. 80, where the defendant was completely prohibited from consulting with counsel overnight. The limitations the court imposed here did not interfere with appellant's right to access to his counsel, so we overrule the second assignment of error.
 {¶ 17} Third, appellant contends that the evidence was insufficient to sustain his conviction. Appellant asserts that the crime of robbery consists of four basic elements, that the defendant (a) knowingly (b) committed or attempted to commit a theft offense, and (c) recklessly (d) inflicted, attempted to inflict, or threatened to inflict physical harm. State v.Crawford (1983), 10 Ohio App.3d 207. Appellant asserts that there is insufficient evidence that he recklessly caused physical harm to Mr. Woodie. We disagree. Mr. Woodie testified that appellant threw him to the ground and struggled with him. Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." A reasonable jury could find that, by throwing Mr. Woodie to the ground and struggling with him, appellant perversely disregarded a known risk that the septuagenarian victim would be injured. Therefore, we overrule the third assignment of error.
 {¶ 18} Appellant next contends that the manifest weight of the evidence does not support his conviction. Ms. Harris contradicted Mr. Woodie when she testified that appellant did not throw Woodie to the ground. The mere fact of a conflict in the testimony does not demonstrate that the jury lost its way, however. It was for the jury to decide which witness's testimony was more believable. Therefore, we overrule the fourth assignment of error.
 {¶ 19} Fifth, appellant urges that the indictment was insufficient because it did not charge the mens rea elements of robbery. He asserts that the indictment therefore failed to charge an offense. "[A]n indictment charging an offense solely in the language of a statute is insufficient when a specific intent element has been judicially interpreted for that offense." Statev. O'Brien (1987), 30 Ohio St.3d 122, 124.
 {¶ 20} Under Crim.R. 12(C)(2), defects in an indictment are waived if not raised before trial, except failure to show jurisdiction in the court or to charge an offense, which may be raised at any time during the pendency of the proceeding. Appellant here did not raise this issue at any time during the pendency of the proceedings before the trial court. Had he raised the issue in the trial court, the state could have amended the indictment to include the mens rea elements. Crim.R. 7(D);O'Brien, 32 Ohio St.3d at 125-26. Therefore, he has waived this argument on appeal. State v. Davis, Ashland App. No. 03COA016,2004-Ohio-2255, ¶ 48.
 {¶ 21} Sixth, appellant claims the court erred by failing to instruct the jury that the state was required to prove, beyond a reasonable doubt, that appellant recklessly inflicted, attempted to inflict, or threatened to inflict, physical harm. Because appellant's counsel did not object to the court's instructions, we must evaluate this assignment of error under a plain error analysis. See, e.g., State v. Williford (1990),49 Ohio St.3d 247, 251. "[A]n erroneous jury instruction `does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Cooperrider (1983),4 Ohio St.3d 226, 227 (quoting State v. Long (1978), 53 Ohio St.2d 91, 97). As noted above, there was ample evidence that appellant recklessly caused physical harm to Woodie. Therefore, we cannot say that the outcome of the trial would have been different if the jury had been instructed on this issue. The sixth assignment of error is overruled.
 {¶ 22} Seventh, appellant urges that his attorney did not provide him with effective assistance. "To win a reversal on the basis of ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693. Accord State v. Bradley (1989),42 Ohio St. 3d 136, 538 N.E.2d 373, paragraph two of the syllabus. `To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' Id., paragraph three of the syllabus." State v. Jones,91 Ohio St.3d 335, 354, 2001-Ohio-57.
 {¶ 23} In this case, appellant claims his attorney's performance was deficient because he failed to object to the indictment and failed to request a jury instruction regarding recklessness. Assuming that these alleged deficiencies fell outside the "wide range of reasonable professional assistance,"Strickland, 466 U.S. at 689, we cannot say that, but for counsel's errors the result of the trial would have been different. If counsel had objected to the indictment, the state would have had the opportunity to amend it to correct the alleged deficiency; there is no reasonable probability that the indictment would have been dismissed on that basis. Likewise, if counsel had objected to the jury instructions, the court would have included an instruction on recklessness. The outcome of the trial would not likely have been affected because there was ample evidence that appellant recklessly caused physical harm to Woodie. Therefore, we overrule the seventh assignment of error.
 {¶ 24} Finally, appellant challenges the sentence the court imposed upon him. He claims that the court's imposition of a sentence in excess of the minimum statutory term was based on judge-found facts and therefore was unconstitutional pursuant toState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. He further asserts that the Foster remedy of severing the unconstitutional provisions of the sentencing statutes, thus allowing the court to impose any sentence within the appropriate felony range, is an ex post facto law, and that the court is limited to imposition of the minimum term of two years' imprisonment in this case.
 {¶ 25} Appellant was found guilty of robbery, a second degree felony. R.C. 2911.02(A)(2) and (B). The range of sentences available for a second degree felony is two to eight years. Thus, appellant's sentence of seven years' imprisonment was more than the minimum term.
 {¶ 26} Prior to the Ohio Supreme Court's decision in Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, "Ohio ha[d] a presumptive minimum prison term that [had to] be overcome by at least one of two judicial findings." Foster, at ¶ 60. For someone who was never to prison before, the trial court was required to find that the shortest term would "demean the seriousness" of the crime or would inadequately protect the public in order to impose a sentence in excess of the statutory minimum. Otherwise, the court was required to find that the offender had already been to prison to impose more than a minimum term. R.C. 2929.14(B)(2) .
 {¶ 27} In State v. Foster, 109 Ohio St.3d 1, 2006 Ohio 856, the Ohio Supreme Court found that several provisions of S.B. 2 (including R.C. 2929.14(B)(2)) offended the constitutional principles set forth in Blakely v. Washington (2004),542 U.S. 296, that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" Foster, supra, at ¶ 82 (citing UnitedStates v. Booker (2005), 543 U.S. 220, 224).
 {¶ 28} The Foster court severed R.C. 2929.14(B) and other sentencing provisions, and rendered them unconstitutional. As a result, the trial court is no longer obligated to follow these mandatory guidelines when sentencing a felony offender. "Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury." Foster, supra, at ¶ 90. The court further held that cases pending on direct review involving these statutes should be remanded for resentencing. Id. at ¶ 104. Thus, in accordance withFoster, we sustain this assignment of error, vacate appellant's sentence and remand for a new sentencing hearing.
 {¶ 29} Appellant's argument that application of Foster
constitutes an ex post facto law is not yet ripe for our review.State v. Jones, Cuyahoga App. No. 87262 87263,2006-Ohio-4100, ¶¶ 10 11.
 {¶ 30} In resentencing appellant, the trial court may want to keep in mind the Ohio Supreme Court's holding in State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, at ¶ 38: "Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing, * * * nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purpose of sentencing, and R.C. 2929.12, which provides guidance in considering the factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by the statutes that are specific to the case itself."
 {¶ 31} Appellant's conviction is affirmed, his sentence is vacated, and this cause is remanded for resentencing.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Corrigan, J., concur.