**The STATE of Ohio, Appellee,**

**v.**

**ROGERS, Appellant.**

[Cite as *State v. Rogers,* 178 Ohio App.3d 332, 2008-Ohio-4867.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90280.

Decided Sept. 25, 2008.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Carrie Heind-richs, Assistant Prosecuting Attorney, for appellee.

Thomas A. Rein, for appellant.

BOYLE, M.J., Judge.

{¶ 1} Defendant-appellant, Ralph Rogers, appeals from a judgment finding him guilty of three counts of robbery and one count of theft and sentencing him. For the following reasons, we affirm in part, reverse in part, and remand.

{¶ 2} In March 2007, the Cuyahoga County Grand Jury returned a four-count indictment against Rogers charging two counts of robbery in violation of R.C. 2911.02(A)(1) and two counts of robbery in violation of R.C. 2911.02(A)(2).

Rogers entered a plea of not guilty to the charges. The case proceeded to a jury trial, where the following evidence was adduced.

{¶ 3} San Pedro Garcia testified first for the state. He said that on the evening of March 16, 2007, he was driving home from the movies with his nephew and his two children when he saw a man, whom he later identified as Rogers, "working on [his] brother's truck." San Pedro's brother is Jesus Garcia. San Pedro said that he thought it was his cousin working on the truck, so he yelled to him. But the man, whom he did not know, turned around and said, "No, I am working on Dave's truck." San Pedro knew that the truck was Jesus's truck, so he walked over to the man. Meanwhile, San Pedro told his daughter in Spanish to get Jesus. San Pedro testified that he could tell from Rogers's demeanor that Rogers "knew his gig was up."

{¶ 4} San Pedro explained that Rogers "had a hammer in his hand" and was "stealing the radiator and taking parts off the truck." San Pedro said that Rogers already had the radiator hoses cut and the bolts off of it. He said that Rogers had other tools too, such as "sockets, wrenches, [and] screwdrivers." San Pedro also stated that he knew Rogers had a knife as well because he had cut the radiator hoses.

{¶ 5} San Pedro further testified that Rogers tried to hit him with the hammer, but he "grabbed the hammer off [Rogers]." He said that Rogers "pulled on it," and he told Rogers, "You not going nowhere." San Pedro "ripped the [hammer] off him," and told him, "Don't move." At that point, San Pedro explained that Rogers told him, "Come on, man, I just need a couple bucks * * *. Times are hard," and "I just need a couple extra dollars to get something to eat."

{¶ 6} Jesus arrived at the scene and began looking at the truck to determine what was missing. San Pedro testified that Rogers "grabbed for something out of his side," and that is when he hit Rogers with the hammer and they began to fight. Jesus joined in the struggle and hit Rogers with a baseball bat. The police arrived about five or ten minutes later and detained Rogers. San Pedro said his arm was twisted in the fight, and his injuries included tendonitis in his "armpit area," bruising, and soreness.

{¶ 7} On cross-examination, San Pedro admitted that he never saw Rogers with a knife throughout the entire incident.

{¶ 8} Jesus Garcia testified next for the state. He explained that his niece told him that there was somebody "messing" with his truck. He went "out there and [he] saw [his] brother with this guy [whom he identified as Rogers] against the hood, and he was wrestling a hammer with him." He saw San Pedro take the hammer from Rogers. Jesus said that Rogers appeared to be intoxicated. Jesus

testified that Rogers was "like, oh, man, oh, man, don't call the police. I have to get money for my family."

{¶ 9} Jesus explained that "at that time, [Rogers] started reaching for his waistband" and was struggling to get away. Jesus looked inside his truck and saw that the radiator hoses had been cut and the bolts removed. Jesus saw that San Pedro was still struggling with Rogers, so he grabbed a baseball bat from the back of the truck and hit Rogers with it. The police soon arrived.

{¶ 10} On cross-examination, Jesus admitted that he never saw Rogers with a knife.

{¶ 11} Next to testify was Officer Ryan Ross of the Cleveland Police Department. Officer Ross said that he received a radio call that there was a "theft in progress." When he and his partner arrived at the scene, he saw San Pedro and Jesus "holding down the defendant in the snow." Officer Ross said that he handcuffed Rogers immediately and placed him inside the police cruiser. When he later patted Rogers down, he found a knife in his pocket. Rogers told the officers that he had been victimized and injured. Officer Ross explained that he also found Rogers's backpack at the scene that was full of tools, including "three screwdrivers, pry bars, [a] box cutter, [and] pliers."

{¶ 12} Officer Ross said that they took Rogers to the emergency room, but he explained that Rogers became very "[d]isruptive to the ER staff," and the staff told him he had to leave, so the officers escorted him out of the hospital and took him to the station.

{¶ 13} Detective Gregory Cook of the Cleveland Police Department testified last for the state. He said that he interviewed Rogers in jail. Rogers told him that he had been walking down an alley when he was approached by two people who "accused him of stealing from their car and they assaulted him." Detective Cook said that Rogers also told him that he was hit with a hammer and a baseball bat, that he had been working on a friend's radiator and that is why he had radiator fluid on his hands, and that he had the tools because he had been doing home improvements on a friend's house.

{¶ 14} At the close of the state's case, Rogers moved for a Crim.R. 29 acquittal on all counts, which the trial court denied.

{¶ 15} Rogers took the stand on his own behalf. He testified that he was "coming back from a friend's house" with his "backpack and tools" when he thought, "I need a couple dollars so I can get back to work." He explained that he had seen the truck parked at this abandoned house "for months," with a flat tire, busted out grill, and the back window shattered. He said that he lifted the hood of the truck and soon after, was assaulted by two men with a hammer and baseball bat.

{¶ 16} Rogers further stated, "I'm not trying to hurt nobody. I'm just trying to take a radiator out of a truck. I didn't know he owned it. I didn't try to rob him." Rogers said that he had had his pocket knife as a "work tool." He explained that it was "[n]ot a robbery. It was a petty theft, if anything." He said that he "needed a few dollars."

{¶ 17} On cross-examination, Rogers testified that he did not tell Detective Cook that he was stealing because he thought he "was just taking something somebody did not want." He said that when San Pedro first yelled at him, he pulled the name Dave "out of the air." He admitted that San Pedro came up to him and asked him what he was doing; San Pedro did not just assault him. Rogers said that he did not have a conversation with San Pedro, however, because he was "leaning * * * under the hood taking it apart."

{¶ 18} Rogers further stated that he had grabbed his tools when San Pedro came up to him because he was going to put them in his backpack and try to get away from San Pedro. Rogers explained that he was trying to leave "because [San Pedro] was trying to hit [him] with the hammer from stealing the radiator." But Rogers denied that he "raised [his] hammer" or "swung at them." He said that he was "way bigger than him" and "could have banged him upside the head and ran." Rogers added, "I wasn't about to compound my stupidness into major crap."

{¶ 19} Rogers also admitted having prior felonies, including assault on a police officer, drug possession, and assaulting an inmate.

{¶ 20} The jury found Rogers guilty of two counts of robbery in violation of R.C. 2911.02(A)(1), one count of robbery in violation of R.C. 2911.02(A)(2), and one count of theft, as a lesser included offense of robbery, in violation of R.C. 2913.02(A)(1).

{¶ 21} The trial court sentenced Rogers to two years in prison on each of the three robbery convictions, and ordered that they be served concurrently with one another. It also sentenced him to six months in the county jail on the theft conviction and ordered that it be served concurrently with the robbery convictions in prison. Accordingly, Rogers was sentenced to an aggregate term of two years in prison.

{¶ 22} It is from this judgment that Rogers appeals, raising two assignments of error for review:

{¶ 23} "[1] The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.

{¶ 24} "[2.] Appellant's conviction is against the manifest weight of the evidence."

## DEFECTIVE INDICTMENT UNDER COLON

{¶ 25} We will first consider an issue that Rogers raised at oral argument. Rogers contends that under *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (*"Colon I"*), which was released after he submitted his brief, his convictions for robbery should be vacated. We agree with Rogers that one of his convictions for robbery under R.C. 2911.02(A)(2) should be vacated, but not the two convictions for robbery under R.C. 2911.02(A)(1).

{¶ 26} The indictment charging Rogers included four counts of robbery: two counts as a violation of R.C. 2911.02(A)(1) and two counts as a violation of R.C. 2911.02(A)(2). As in *Colon I*, the indictment here merely echoed the robbery statute and "did not expressly charge the mens rea element of the crime of robbery." *Colon I* at ¶ 4.

{¶ 27} R.C. 2911.02(A) provides:

{¶ 28} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 29} "(1) Have a deadly weapon on or about the offender's person or under the offender's control;

{¶ 30} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."

### R.C. 2911.02(A)(2): INFLICT PHYSICAL HARM

{¶ 31} In *Colon I*, the Supreme Court explained that "R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of 'inflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard." Id. at ¶ 14. Because " 'recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability,' " the state was required to prove that the defendant "recklessly inflicted, attempted to inflict, or threatened to inflict physical harm." Id. at ¶ 13–14, quoting *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, at ¶ 21. Because the indictment failed to charge "that the physical harm was recklessly inflicted," it omitted one of the essential elements of the crime of robbery and thus, was defective. Id. at ¶ 15.

{¶ 32} In determining whether an indictment that fails to charge an essential element can be raised for the first time on appeal, the Supreme Court applied a structural-error analysis, rather than a plain-error analysis. Id. at ¶ 19. It described "structural errors" as constitutional defects that "defy analysis by 'harmless error' standards" because they " 'affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " (Citations omitted.) Id. at ¶ 20. It further reasoned, " ' "such errors permeate

[t]he entire conduct of the trial from beginning to end so that the trial cannot 'reliably serve its function as a vehicle for determination of guilt or innocence.' ' " Id., quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302, quoting *Rose v. Clark* (1986), 478 U.S. 570, 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460.

{¶ 33} Having found the indictment defective, and having determined that the defect was a structural error, the Supreme Court held, "When an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at the syllabus.

{¶ 34} On July 31, 2008, the Supreme Court reconsidered *Colon I*. See *State v. Colon,* 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 (*"Colon II"*). It made clear that "the rule announced in *Colon I* is prospective in nature and applies only to those cases pending on the date *Colon I* was announced." *Colon II* at ¶ 5. It explained, "We assume that the facts that led to our opinion in *Colon I* are unique" and "emphasize[d] that the syllabus in *Colon I* is confined to the facts in that case." *Colon II* at ¶ 6, 8.

{¶ 35} We must now consider whether the holding in *Colon I,* as reconsidered, implicates Rogers's conviction for robbery under R.C. 2911.02(A)(2). The indictment charging Rogers under this provision is substantially identical to the indictment in *Colon I*. As in *Colon I,* the indictment against Rogers failed to include language alleging that he "recklessly" inflicted, attempted to inflict, or threatened to inflict physical harm on another and thus, it omitted an essential element of the crime. Furthermore, there is no question that Rogers's appeal was pending on the date *Colon I* was announced. Accordingly, Rogers's conviction for robbery under R.C. 2911.02(A)(2) (count three of the indictment) must be reversed and vacated.[1]

### R.C. 2911.02(A)(1): DEADLY WEAPON

{¶ 36} Rogers's other two robbery convictions, under R.C. 2911.02(A)(1), require a separate analysis. *Colon I* did not address whether recklessness is the mens rea for robbery under R.C. 2911.02(A)(1). The Ohio Supreme Court, however, has previously addressed whether recklessness is an element of robbery

---

1. In *State v. Davis,* 8th Dist. No. 88895, 2007-Ohio-5843, 2007 WL 3203040, the appellant had argued that his indictment charging robbery under R.C. 2911.02(A)(2) was defective, but conceded that he did not argue it below. This court, "[a]dhering to [its] precedent" in *State v. Colon,* 8th Dist. No. 87499, 2006-Ohio-5335, 2006 WL 2899957, held that he had waived this issue because he did not raise it below. After the Supreme Court reconsidered *Colon I,* it reversed *Davis* in a one-paragraph opinion, stating only that it was reversed "on the authority of [*Colon I*]." *State v. Davis,* 119 Ohio St.3d 113, 2008-Ohio-3879, 892 N.E.2d 446, ¶ 2. The indictment against Rogers is identical to the indictment in *Davis* and thus, further supports reversal of Rogers's conviction for robbery under R.C. 2911.02(A)(2).

under this provision. See *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172.

{¶ 37} In *Wharf*, the Ohio Supreme Court held that "the General Assembly intended that a theft offense, committed while an offender was in possession or control of a deadly weapon, is robbery and no intent beyond that required for the theft offense must be proven." Id. at 377, 715 N.E.2d 172. Further, the court held that "by employing language making mere possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." Id. at 378, 715 N.E.2d 172.

{¶ 38} Accordingly, because the Ohio Supreme Court has determined that R.C. 2911.02(A)(1) is a strict liability offense and that the deadly-weapon element does not require the mens rea of recklessness, we conclude that the provisions of that section of the robbery statute are unaffected by the holding in *Colon I*. Therefore, we conclude that *Colon I*, as reconsidered, is not applicable to Rogers's two convictions for robbery under R.C. 2911.02(A)(1) (counts one and two of the indictment).

{¶ 39} In the remaining two assignments of error, we will address only Rogers's sufficiency and manifest-weight issues as they relate to his convictions for robbery under R.C. 2911.02(A)(1) and not R.C. 2911.02(A)(2). We will not consider his misdemeanor theft conviction (as a lesser included offense of robbery) either, because Rogers admits that he had been trying to take the radiator, and further concedes that it was "petty theft."

## SUFFICIENCY

{¶ 40} In his first assignment of error, Rogers argues that his convictions for robbery were not supported by sufficient evidence. Specifically, he contends that although "[t]here is no question that [Rogers] was trying to take the radiator," he did not intend to hurt anyone, and he did not brandish the knife to San Pedro or Jesus.

{¶ 41} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273, 574 N.E.2d 492.

{¶ 42} Thus, we must determine whether the state presented sufficient evidence such that a rational trier of fact could have found the essential elements of robbery under R.C. 2911.02(A)(1) proven beyond a reasonable doubt. In order to prove beyond a reasonable doubt that Rogers committed robbery under R.C. 2911.02(A)(1), the state had to present sufficient evidence that Rogers, while committing or attempting to commit a theft, had "a deadly weapon on or about [his] person or under [his] control."

{¶ 43} Again, Rogers admits that he was trying to take the radiator. He argues, however, that it was not robbery because San Pedro and Jesus admitted they never saw him with a knife. The state points out that the deadly weapon was not the knife, but the hammer. Indeed, the indictment specifies that the deadly weapon was a hammer.

{¶ 44} Under R.C. 2923.11(A), "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 45} As the Supreme Court explained in *Wharf*:

{¶ 46} "According to the statutory language, possession of a deadly weapon is all that is required to elevate a theft offense to robbery. See *State v. Merriweather* (1980), 64 Ohio St.2d 57, 59, 18 O.O.3d 259, 413 N.E.2d 790. In fact, R.C. 2911.02(A)(1) provides that the offender need not have actual physical possession of the weapon but only that it be "under [his or her] control." See *State v. Brown* (1992), 63 Ohio St.3d 349, 351, 588 N.E.2d 113. * * * Thus, no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of the statute. Had the legislature so intended, it certainly could have required a level of conduct more severe than it did in order to show a violation of the statute. Thus, by employing language *making mere possession or control of a deadly weapon, as opposed to actual use or intent to use,* a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." (Emphasis added.) *Wharf,* 86 Ohio St.3d at 377–378, 715 N.E.2d 172.

{¶ 47} At the jury trial, San Pedro testified that Rogers had had a hammer in his hand when he was taking parts off of the radiator. San Pedro further stated that when he walked up to Rogers, Rogers tried to hit him with the hammer, but that San Pedro was able to grab it from him. Jesus testified that he saw San Pedro and Rogers "wrestling" over a hammer and then saw San Pedro take the hammer from Rogers.

{¶ 48} Officer Ross corroborated this testimony, stating that when he responded to a "theft in progress," San Pedro and Jesus had Rogers pinned to the ground. Rogers also told Officer Ross that the backpack full of tools was his, including "three screwdrivers, pry bars, [a] box cutter, [and] pliers." Although Rogers did not specifically state that the hammer was his, we can infer that since the backpack full of tools was his, so was the hammer.

{¶ 49} Viewing this testimony in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of robbery proven beyond a reasonable doubt. Accordingly, Rogers's first assignment of error is without merit.

## MANIFEST WEIGHT

{¶ 50} In his second assignment of error, Rogers argues that his convictions were against the manifest weight of the evidence. Again, Rogers admits to committing theft. Thus, we must determine only whether Rogers's convictions for robbery under R.C. 2911.02(A)(1) were against the manifest weight of the evidence.

{¶ 51} In *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, the Supreme Court explained:

{¶ 52} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its *effect in inducing belief.'* (Emphasis added.) * * *

{¶ 53} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * * 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.)

{¶ 54} With this standard in mind, we conclude that Rogers's convictions were not against the manifest weight of the evidence. San Pedro testified that he saw Rogers bent over the truck, working on it. When San Pedro approached Rogers,

Rogers had a hammer in his hand and tried to hit San Pedro with it. Jesus testified that he saw San Pedro and Rogers wrestling over the hammer. San Pedro said he was able to get the hammer from Rogers and then he hit Rogers with it.

{¶ 55} Although Rogers testified that he was confronted "by two brothers with a hammer and a baseball bat and was beaten," we conclude that the jury did not clearly lose its way by believing San Pedro and Jesus over Rogers. We find this to be especially true because Rogers initially denied to Officer Ross that he had been trying to steal the radiator. And Detective Cook testified that Rogers told him that he was just "walking down an alley" when he was approached by two people who assaulted him with a hammer and a baseball bat. At trial, however, Rogers completely changed his "story," and admitted that he was "just trying to take a radiator out of a truck" when he was assaulted.

{¶ 56} Accordingly, after weighing all the evidence and all reasonable inferences, we conclude that this was not the "exceptional case" in which the evidence weighed heavily against the convictions. Rogers's second assignment of error is not well taken.

{¶ 57} Rogers's first and second assignments of error are overruled. His supplemental assignment raised at oral argument with respect to his conviction under R.C. 2911.02(A)(2) is sustained, and therefore, his conviction under R.C. 2911.02(A)(2) (count three of the indictment) is vacated.

{¶ 58} Thus, the judgment of the Cuyahoga County Court of Common Pleas is affirmed in part (with respect to Rogers's two convictions for robbery under R.C. 2911.02(A)(1) and his conviction for theft as a lesser included offense of robbery); reversed in part (with respect to count three, robbery as a violation of R.C. 2911.02(A)(2)); and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

SWEENEY, A.J., and ROCCO, J., concur.