[Cite as *State v. Marneros*, 2021-Ohio-2844.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                              No. 109258

    v. :

MICHAEL MARNEROS, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 19, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638811-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Joseph Pagano, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Michael Marneros ("Marneros") appeals his convictions for firearm-related offenses. For the reasons that follow, we affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

{¶ 2} On April 4, 2019, Marneros was driving with codefendant Wayman Kent ("Kent") in the front passenger seat to a gas station located at the intersection of East 131st Street and Harvard Avenue in East Cleveland. The vehicle belonged to his fiancée Terancita Jones-Green ("Green"), a retired Cleveland police officer. Earlier that morning, Marneros had dropped her off at church.

{¶ 3} The gas station had been reported for high drug activity to the Cleveland Police Vice Unit. In response to the reports, several vice officers were detailed to that area to conduct surveillance for drug activity. That day, Sergeant Jarrod Durichko ("Durichko") was conducting surveillance with Detective Daniel Hourihan ("Hourihan"), Detective Robert Kowza ("Kowza"), and Detective Matthew Pollack ("Pollack"). They are not a traffic enforcement unit and generally do not stop vehicles for traffic violations. Durichko testified that the vice unit focuses mostly on drug enforcement, but also handles cases dealing with prostitution as well as liquor and gambling enforcement.

{¶ 4} The unit was conducting surveillance at the intersection of East 131st Street and Harvard Avenue, which included the gas station Marneros had pulled into. According to Hourihan, they were there specifically looking for drug activity and drug dealers. Durichko was undercover at the intersection, observing the gas station and looking for drug activity. The other detectives were in a takedown capacity, which means they were equipped to take action if Durichko viewed any

criminal activity. Hourihan was in an unmarked car facing west on East 136th Street and Kowza and Pollack were in another vehicle together behind Hourihan.

{¶ 5} During their surveillance, Durichko witnessed Marneros's vehicle pull into the gas station next to a gas pump, where three separate individuals each came up to the car, briefly leaned into the driver's side window, and then walked away. Durichko testified that it was the three individuals approaching Marneros's vehicle and sticking their head in the window that were "red flags" for him that there was likely a drug exchange occurring. However, no actual hand-to-hand exchange of drugs or money was witnessed by the officers.

{¶ 6} As Marneros was leaving the gas station parking lot, he turned left to head east on Harvard Avenue without using his turn signal. Because Marneros did not use a turn signal, Durichko radioed Hourihan, who was on East 136th Street, to conduct a traffic stop of Marneros's vehicle for a traffic violation. As Marneros passed East 136th Street, Hourihan pulled Marneros over. Upon stopping the car, Hourihan spoke with Marneros and learned his driver's license was under suspension. Hourihan removed Marneros from the vehicle and conducted a pat-down, finding a small bag of marijuana. At this time, Hourihan radioed Pollack and Kowza to assist him with the stop. They arrived and Pollack began speaking with Kent.

{¶ 7} While detained in handcuffs, Marneros called Green to inform her about the traffic stop of her vehicle. After speaking with her, Marneros informed the officers that there was a firearm in the vehicle. Green claimed she had placed her

firearm in between the driver's seat and the center front console, which Marneros conveyed to the officers. Upon learning this, the officers searched the vehicle and found the firearm and a box of ammunition under the driver's seat. The firearm's serial number was scratched off. In the meantime, Kent was detained and patted down by Pollack, who found contraband in Kent's underwear. Both men were arrested and taken to jail. Marneros was issued a citation for violating CCO 431.14, signals before changing course, turning or stopping, a minor misdemeanor, and CCO 435.07(A), driving under a suspended/revoked license, a first-degree misdemeanor.

{¶ 8} On April 26, 2019, a Cuyahoga County Grand Jury indicted Marneros and Kent on charges that arose out of the April 4, 2019 traffic stop. Marneros was charged with: Count 1, having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony; Count 2 improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony; Count 3 carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony; and Count 4 possessing a defaced firearm in violation of R.C. 2923.201(A)(2), a misdemeanor of the first degree. Kent was charged with drug offenses for the drugs found on his person.

{¶ 9} Thereafter, various pretrial hearings occurred. Kent's counsel filed a motion to suppress, and the court held a hearing on the motion on August 6, 2019. Durichko, Hourihan, and Pollack testified at the suppression hearing. The court denied Kent's motion to suppress. Marneros's counsel never filed a motion to

suppress on his behalf. A plea agreement was offered by the state, which required both Marneros and Kent to jointly accept the plea agreement, otherwise they would go to trial. The state offered to amend Count 1, to add the attempt statute to make the charge attempted having weapons while under disability, a fourth-degree felony and nolle Counts 2 and 3, leaving Count 4 as indicted. The deal would have reduced Marneros's potential maximum prison sentence from 36 months to 19 months on the having weapons while under disability charge. Marneros declined this offer and chose to take the case to trial.

{¶ 10} On August 7, 2019, a joint jury trial commenced for both Marneros and Kent. The state called Mallory Foran, an employee of the Cuyahoga County Regional Forensic Science Laboratory in the firearm and toolmark section. She testified regarding the operability of the firearm found in Green's vehicle, which she found to be operable as designed. The state also called Leslie Lemmberbrock, who testified as a forensic drug chemist for the Cuyahoga County Medical Examiner's office regarding the drugs found during the traffic stop. Through testing, she was able to identify the substance in Marneros's bag as marijuana and the substances in Kent's bags as oxycodone, acetaminophen, heroin, fentanyl, cocaine, and tramadol. Finally, the state called Durichko, Pollack, and Hourihan. The defense only called Green, who testified regarding the firearm in her vehicle, and John Rogers, Kent's previous employer.

{¶ 11} On August 12, 2019, the jury returned a verdict of guilty on all counts. A sentencing hearing was set for September 19, 2019. Marneros failed to attend this

hearing and a capias was issued the same day. On October 18, 2019, Marneros was apprehended. On October 22, 2019, the court proceeded with a sentencing hearing where it imposed an aggregate 36-month sentence, the maximum sentences on all counts, and ordered them to run concurrently: 36 months for the weapons while under a disability charge, 18 months for the improperly handling firearms in a motor vehicle charge, 18 months for carrying a concealed weapon charge, and 6 months for possessing a defaced firearm. The court also advised Marneros of the possibility of a three-year discretionary period of postrelease control.

{¶ 12} This appeal follows. Marneros asserts five assignments of error:

I. Appellant's Sixth Amendment rights were violated because counsel did not file a motion to suppress and did not object to the testimony of Mallory Foran.

II. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

III. The convictions were against the manifest weight of the evidence.

IV. The trial court erred by giving the proposed jury instruction on constructive possession over appellant's objection.

V. Appellant's sentence is contrary to law because the record does not support the imposition of maximum sentences on each count.

**LAW AND ANALYSIS**

{¶ 13} Marneros's first assignment of error alleges his Sixth Amendment rights were violated when he received ineffective assistance of counsel in two distinct instances in his case. Marneros alleges the first instance occurred when his trial counsel failed to file a motion to suppress the firearm found during the initial traffic stop, the basis for all four charges and convictions. Marneros alleges the officers did

not have probable cause to justify the traffic stop, which would mean that the firearm should have been suppressed and the state would not have had evidence to support any of his four charges. The second instance of ineffective assistance occurred when trial counsel failed to object to Mallory Foran's ("Foran") testimony regarding operability of the firearm found in his vehicle.

{¶ 14} Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution grant a defendant the right in all criminal prosecutions to have counsel's assistance for one's defense. The Supreme Court of the United States has reasoned that the right to counsel for one's defense entails having the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To that effect, the United States Supreme Court has established the elements required to prevail on an ineffective assistance of counsel claim, which the Ohio Supreme Court has adopted. *See Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 15} One must show two things to succeed on such a claim: (1) counsel substantially violated an essential duty to the client, which requires showing that counsel's representation fell below an objective standard of reasonableness, and (2) the violation prejudiced the defense, which requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Bradley* at 141-142, citing *Strickland.*

{¶ 16} Further, "trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Because of this presumption that a properly licensed attorney is competent, the burden of proof for these claims is high. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶ 17} This court has held that to establish ineffective assistance of counsel for failure to file a motion to suppress, one must prove that: (1) there was a basis to suppress the evidence in question and (2) that failure to file the motion to suppress caused prejudice. *State v. Garcia*, 8th Dist. Cuyahoga No. 94386, 2010-Ohio-5780, ¶ 8, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d; *State v. Robinson,* 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996). Failure to file a motion to suppress is not per se ineffective assistance of counsel. *Garcia* at ¶ 8 (citations omitted). Put simply, failure to file a motion to suppress constitutes ineffective assistance of counsel only if the motion would have been granted. *State v. Willis*, 8th Dist. Cuyahoga No. 89044, 2008-Ohio-444, ¶ 48, quoting *State v. Kuhn,* 9th District Lorain No. 05CA008859, 2006-Ohio-4416, ¶ 11, citing *Robinson*.

{¶ 18} Therefore, we must begin the analysis of this assignment of error by analyzing whether Marneros would have been successful on a motion to suppress the evidence found as a result of the traffic stop. If the motion would have been

successful, we will examine whether the failure to file this motion prejudiced Marneros such that his Sixth Amendment rights were violated. Motions to suppress the evidence found during a traffic stop are granted when the stop violates one's Fourth Amendment rights against unreasonable searches and seizures. *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 13.

{¶ 19} Article I, Section 14, of the Ohio Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable governmental searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *State v. Taylor*, 2020-Ohio-5079, 161 N.E.3d 844, ¶ 38 (8th Dist.), citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

{¶ 20} A permissible traffic stop occurs when a police officer has probable cause to reasonably believe a traffic violation has occurred or was occurring. *State v. Uyi Okundaye*, 8th Dist. Cuyahoga No. 94796, 2010-Ohio-6363, ¶ 15, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The Ohio Supreme Court has held that "as long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *Dayton v. Erickson,* 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091, ¶ 9.

{¶ 21} A reviewing court must determine whether a law enforcement officer possessed probable cause to stop a vehicle by examining the "totality of the

circumstances." *State v. McDonald*, 4th Dist. Washington No. 04CA7, 2004-Ohio-5395, ¶ 19. This requires the court to make "an objective assessment of a police officer's actions in light of the facts and circumstances." *Cleveland v. Jones*, 8th Dist. Cuyahoga No. 107257, 2019-Ohio-1525, ¶ 14, quoting *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 14. However, the Ohio Supreme Court has held that an officer who has "probable cause necessarily has a reasonable and articulable suspicion * * * to justify a stop." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 22} Marneros argues that the officers in this case had neither probable cause that a traffic violation occurred nor reasonable articulable suspicion that criminal activity was afoot at the time they stopped him. Examining the totality of the circumstances, we disagree.

{¶ 23} The First District's recent decision in *State v. Brown,* 1st Dist. Hamilton No. C-190755, 2021-Ohio-2193, exemplifies the types of stops that are not permissible and easily distinguishes the facts of this case. There, Officer Sullivan observed Brown in a UR Mart parking lot sitting in his vehicle talking. He observed the driver of a red pickup truck parked in front of Brown engage in a hand-to-hand exchange for drugs at his truck before leaving the parking lot. *Id.* at ¶ 5-6. Brown pulled out with the pickup truck and drove behind it. *Id.* Sullivan radioed two officers in their cruiser to pull over the pickup truck while Brown was behind it. *Id.* at ¶ 7. Brown then "slow rolled" past the officers and the stopped pickup truck before driving into a casino parking garage. *Id.* Sullivan then followed Brown into the

parking garage and without seeing any traffic violations or Brown breaking any other laws, he ordered an officer to stop Brown's vehicle for a drug investigation. *Id.* at ¶ 9. It took eighteen minutes for the requested drug dogs to arrive and search Brown's vehicle where they found a digital scale with drug residue on it. *Id.* The trial court granted the defense's motion to suppress this evidence alleging the stop was impermissible. *Id.* at ¶ 12.

{¶ 24} The First District affirmed the trial court's grant of the motion to suppress holding that Sullivan's "hunch" of criminal activity was insufficient to establish a reasonable suspicion to believe that Brown was committing a crime to justify the stop. *Id.* at ¶ 25. This "hunch" was not based on any observed criminal activity like hand-to-hand exchanges, nor did he witness Brown at any point talk to anyone selling drugs in the parking lot. *Id.* at ¶ 24. Because Sullivan did not witness Brown violate any laws and Sullivan was unable to articulate specific facts indicating Brown was engaged in drug trafficking the stop was impermissible. *Id.* at ¶ 25.

{¶ 25} Unlike the officers in *Brown*, here the officer did in fact witness Marneros commit a traffic offense. Once Durichko witnessed Marneros pull out of the gas station without using his turn signal, a traffic violation of CCO 431.14, the officers had probable cause to effectuate a valid traffic stop of Marneros's vehicle. *Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091; *State v. Newsome*, 8th Dist. Cuyahoga No. 93328, 2010-Ohio-2891, ¶ 24; *State v. Reedy*, 5th Dist. Perry No. 12-CA-1, 2012-Ohio- 4899, ¶ 20. And as the Ohio Supreme Court has also held, an officer who has "probable cause necessarily has a reasonable and articulable

suspicion * * * to justify a stop." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 26} As such, because the stop was valid, there was no basis for the evidence to be suppressed, which means any motion to suppress filed by Marneros's trial counsel would have been denied. With no basis for the motion to suppress, we find that counsel did not violate any duty to Marneros. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Therefore, Marneros's trial counsel's decision not to file a motion to suppress was not ineffective assistance of counsel. *Garcia*, 8th Dist. Cuyahoga No. 94386, 2010-Ohio-5780, ¶ 8, citing *Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29.

## FORAN TESTIMONY

{¶ 27} Marneros also argues in his first assignment of error that his trial counsel was ineffective for not objecting to Foran's testimony. Marneros claims Foran's testimony regarding the operability of the firearm found in his vehicle during the stop should have been inadmissible because she did not qualify as an expert.

{¶ 28} "The admission or exclusion of expert testimony rests within the sound discretion of the trial court." *State v. Williams*, 4 Ohio St.3d 53, 57-58, 446 N.E.2d 444 (1983), citing *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 15. In regard to the ineffective assistance of counsel "[s]trategic decisions by defense counsel, including the decision not to object to certain

testimony, fall within the realm of trial tactics and do not establish ineffective assistance of counsel." *State v. Owens,* 8th Dist. Cuyahoga No. 98165, 2012-Ohio-5887, ¶ 19.

{¶ 29} The state had the burden of proving that the "firearm" found in Marneros's vehicle, as used in R.C. 2923.13, was operable or readily capable of being rendered operable. *State v. Mays*, 6th Dist. Lucas No. L-12-1173, 2013-Ohio-3553, ¶ 16. The state can prove that a firearm was operable or readily rendered operable in a variety of ways. *State v. Hayes*, 8th Dist. Cuyahoga No. 93785, 2010-Ohio-5234, ¶ 18. When determining the operability of a firearm, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2); *State v. Hayes*, 8th Dist. Cuyahoga No. 93785, 2010-Ohio-5234, ¶ 17. The Ohio Supreme Court has held that "the state can rely upon all of the surrounding facts and circumstances" in order to demonstrate that a certain object at issue constitutes a firearm and that "proof of the existence of a firearm may be based on lay testimony, and is not dependent on an empirical analysis of the gun." *In re C.B.*, 8th Dist. Cuyahoga No. 95256, 2010-Ohio-5620, ¶ 13, quoting *State v. Murphy* 49 Ohio St.3d 206, 207-209, 551 N.E.2d 932 (1990).

{¶ 30} In *In re C.B.*, this court examined a similar situation where a defendant failed to object to testimony regarding the operability of the firearm found in his vehicle. *In re C.B.,* 8th Dist. Cuyahoga No. 95256, 2010-Ohio-5620, ¶ 12. The testimony came from an officer who testified as to his examination of the firearm,

professional experience, training, and previous use of the same type of firearm. *Id.* at ¶ 14-15. The testimony was subject to cross-examination and even though not officially qualified as an expert, his testimony was sufficient to establish the operability of the firearm beyond a reasonable doubt. *Id.* at ¶ 16.

{¶ 31} In the instant case, while Marneros's trial counsel did not object to Foran's testimony, Foran was clearly qualified to testify as an expert witness regarding the firearm. She testified that her education included a Bachelor of Science in forensic science along with an in-house training period of about one year under a court-qualified firearms examiner, which included training of safe handling of firearms and test firing them under supervision. She was also certified by the Bureau of Alcohol, Tobacco, Firearms and Explosives National Firearms Examiner Academy in a yearlong program, which involved instruction from firearm examiners across the country. She also testified to her knowledge and experience with firearms generally as a scientist at the Cuyahoga County Regional Forensic Science Laboratory. She testified that she has worked in the Firearm and Toolmark section of the laboratory for over two years and one of her main duties includes test firing firearms to see if they work as designed. She testified that she has tested over 400 firearms to date.

{¶ 32} Foran also testified in detail as to how she normally tests the firearms by firing bullets into a water tank and how results are documented in lab reports. Last, she testified how she tested the operability of the firearm found in Marneros's vehicle and the results of the test indicated the firearm was operable. Defense

counsel did not object to her testimony regarding the firearm's operability. Foran's testimony was subject to cross-examination by defense counsel who questioned her vigorously regarding this as her first time testifying in court and her lack of knowledge about the second location for the firearm's serial number, which she testified she did not know.

{¶ 33} In *State v. Doumbas,* 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026, ¶ 67, this court held that counsel's decision to rely on cross-examination of an expert, rather than objecting or trying to have it kept out with a motion in limine, is a strategic decision to weaken the influence of his testimony on the jury. "This type of strategic decision falls within the realm of professionally competent assistance and does not constitute deficient performance by appellant's counsel. *Id.*, *see also Owens,* 8th Dist. Cuyahoga No. 98165, 2012-Ohio-5887, at ¶ 19 ("Strategic decisions by defense counsel, including the decision not to object to certain testimony, fall within the realm of trial tactics and do not establish ineffective assistance of counsel.").

{¶ 34} Similarly, in this case, Marneros's trial counsel likely did not object to Foran's testimony because the objection would have been properly overruled because Foran was clearly qualified to testify regarding the operability of the firearm. Regardless, the decision to call an expert falls within the realm of trial tactics strategic decisions and does not establish an ineffective assistance of counsel claim. *Id.*; *Owens* at ¶ 19. As such, Marneros is unable to satisfy the first element of an ineffective assistance claim. *Bradley* at 141-142.

{¶ 35} Even if counsel had objected to her testimony, Marneros points to no evidence that suggests the trial court would have stricken her testimony for any reason or that the outcome of the trial would have been different. Furthermore, the testimony from Marneros's fiancée, Green, regarding the firearms operability could have been utilized in Foran's place, thereby establishing operability even had Foran's testimony been striken. Therefore, Marneros's counsel did not violate any essential duty to him and was not ineffective for not objecting to Foran's testimony. *Id.* We overrule his first assignment of error.

**Insufficient Evidence**

{¶ 36} Marneros's second assignment of error alleges his convictions were not supported by sufficient evidence such that the trial court erred by denying his motions for acquittal. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Rogers*, 178 Ohio App.3d 332, 2008-Ohio-4867, 897 N.E.2d 1171, ¶ 41 (8th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law." *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Bowden,* 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12, citing *Jenks* at paragraph two of the syllabus.

{¶ 37} Specifically, Marneros argues the state failed to prove the mens rea element of the convicted offenses as well as the possession element. Each of the four offenses Marneros was convicted of required the state to put forth evidence that at some point, Marneros knowingly possessed the firearm found in his vehicle. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." *State v. Body,* 8th Dist. Cuyahoga No. 109388, 2021-Ohio-703, ¶ 30 quoting R.C. 2901.22(B).

{¶ 38} As for possession, a defendant can either actually or constructively possess a firearm. "Actual possession entails ownership or physical control, whereas constructive possession is defined as knowingly exercising dominion and control over an object, even though that object may not be within one's immediate physical possession." *State v. Chandler*, 8th Dist. Cuyahoga Nos. 93664 and 93665, 2011-Ohio-590, ¶ 55, citing *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982).

{¶ 39} A review of the state's evidence makes it clear that the state provided sufficient evidence for any rational trier of fact to conclude beyond a reasonable doubt that Marneros knowingly possessed this firearm. Officer Pollack testified that Marneros informed Officer Pollack about the firearms location in between the driver's seat, where Marneros sat, and the center console. The firearm being found

in his vehicle next to the driver's seat, along with the likely visibility of the gun due to its location, is sufficient evidence for a jury to find that Marneros knew of the firearm and at the very least constructively possessed it by having the firearm in his vehicle which he was exercising control over while operating it.  However, the jury could also find that he actually possessed that firearm.  Contrary to Marneros's arguments, fingerprint or DNA testing is not required to prove a defendant's possession of a firearm.  Therefore, we find the trial court did not err by denying Marneros's motions for acquittal because there was sufficient evidence to support the convictions.  We overrule Marneros's second assignment of error.

## Manifest Weight

{¶ 40} Marneros's third assignment of error alleges his convictions were against the manifest weight of the evidence.

{¶ 41} In assessing whether a conviction is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, and consider the witnesses' credibility.  *Gerston v. Parma VTA, L.L.C.*, 8th Dist. Cuyahoga No. 105572, 2018-Ohio-2185, ¶ 58.  There is a presumption that the factfinder's determinations are correct unless we find that the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered."  *Illum. Co. v. Bosemann*, 2020-Ohio-3663, 154 N.E.3d 1205, ¶ 28 (8th Dist.), quoting *Gerston* at ¶ 58-59.  This is presumed because the trier of fact had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing

the credibility of the proffered testimony." *Gerston* at ¶ 59, quoting *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 42} "A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence." *Gerston* at ¶ 57, citing *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; C.*E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. A conviction should be reversed only in the most "exceptional case in which the evidence weighs heavily against the conviction." *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 77, quoting *Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

{¶ 43} Marneros points to no evidence in the record to argue his convictions were against the weight of the evidence. Our review of the entire record does not convince us that this is an exceptional case where the evidence weighs heavily against the conviction. The only testimony weighing against his conviction is the testimony of Green, Marneros's fiancée. Green testified that she had placed the firearm in the vehicle that morning and that Marneros did not know about it. However, it is within the jury's authority to weigh witness credibility, and jurors do not have to accept all or any testimony as true. This evidence does not weigh so heavily as to convince us that the jury clearly lost its way or that a manifest miscarriage of justice occurred. *Gerston* at ¶ 58-59. Therefore, Marneros's third assignment of error is overruled.

**Jury Instruction**

{¶ 44} Marneros's fourth assignment of error alleges that the trial court erred by providing the state's proposed jury instruction on constructive possession because it is an incorrect statement of the law. We disagree.

{¶ 45} "Whether jury instructions correctly state the law is a legal issue that an appellate court reviews de novo." *State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193, ¶ 27. However, an incorrectly stated instruction is not sufficient for a reversal. "To show reversible error, the defendant must also demonstrate that he or she was prejudiced by the trial court's refusal to give a requested jury instruction." *Echevarria* at ¶ 29. "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Shepherd*, 8th Dist. Cuyahoga No. 102951, 2016-Ohio-931, ¶ 25, quoting *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 27. To determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 49. If the instruction was not prejudicial then, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Shepherd* at ¶ 25, quoting Crim.R. 52(A).

{¶ 46} Marneros alleges the trial court improperly instructed the jury that it was permissible to infer that Marneros constructively possessed the firearm just because it was found in close proximity to him. Marneros points to the following

transcript portion where the trial court read this jury instruction to support his position:

> Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. A person has constructive possession where, conscious of its presence, he exercises dominion and control over something, even though it is not within his immediate physical possession.
>
> If the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items.
>
> Although mere presence in an area where a substance or object is located does not conclusively establish constructive possession, this presence, coupled with another factor probative of the dominion or control over the contraband, may establish constructive possession.

Marneros emphasizes the second paragraph as being an example of the trial court's improper instructions to the jury to infer that Marneros's proximity to the firearm was sufficient to establish constructive possession.

{¶ 47} However, upon closer review of the entire instruction, it is clear that the trial court made sure to instruct the jury that proximity to the firearm was not enough to establish possession. First, in the third paragraph cited by Marneros, the judge instructs the jury that mere presence in an area does not conclusively establish constructive possession, i.e. that it is not permissible to infer possession just because of proximity without another probative fact established by evidence. The court goes on shortly thereafter to instruct the jury that:

> Possess or possession means having control over a thing or substance but may not be inferred solely from mere access to the thing or

> substance through ownership or occupation of the premise upon which the thing or substance is found.

Again, the trial court specifically instructs the jury that mere proximity is not sufficient to establish possession. We find upon full review of the instructions in their entirety that the trial court's jury instructions were proper. Even if the instruction was given in error, Marneros fails to point to any prejudice as a result of this instruction, such an error would be harmless. Therefore, we overrule his fourth assignment of error.

## Maximum Sentences

{¶ 48} Marneros's fifth assignment of error alleges the trial court's imposition of the maximum sentences for each count is not supported by the record and contrary to law. Appellate review of felony sentences is governed by R.C. 2953.08(G)(2), which states that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Evans*, 8th Dist. Cuyahoga No. 109619, 2021-Ohio-1411, ¶ 12, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶ 49} A trial court's sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. Thompson*, 8th Dist. Cuyahoga No. 105785,

2018-Ohio-1393, ¶ 7, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10. "The record must indicate that the trial court considered all relevant factors required by R.C. 2929.11 and 2929.12, but the trial court has no obligation to state reasons to support its findings." *Evans* at ¶ 12, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶ 50} Trial courts are not required to make factual findings on the record under R.C. 2929.11 or 2929.12 before imposing a maximum sentence. *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 21, citing *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27. "Consideration of the factors is presumed unless the defendant affirmatively shows otherwise." *State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12, citing *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234 ¶ 11. "Further, a trial court's statement in its sentencing journal entry that it considered the required statutory factors alone is enough to fulfill its obligations under R.C. 2929.11 and 2929.12." *Id.*, citing *Keith* at ¶ 11.

{¶ 51} In *Seith*, this court upheld the trial court's imposition of the maximum felony sentences against the defendant because each sentence was within the statutory range, even if the highest maximum sentence. *Seith* at ¶ 13. Further, this court found that the trial court's journal entry that stated it "considered all required factors of law" was enough to find that the court considered R.C. 2929.11 and 2929.12 factors. *Id.* at ¶ 14.

{¶ 52} In the instant case, the jury found Marneros guilty of Count 1, having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, Count 2, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree, Count 3, carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, and Count 4, possessing a defaced firearm in violation of R.C. 2923.201(A)(2), a misdemeanor of the first degree. R.C. 2929.14(A)(1),(3), and (4) state that sentencing for felonies of the third degree shall be subject to a range of 9 to 36 months and felonies of the fourth degree are subject to a range of 6 to 18 months. R.C. 2929.24(A)(1) states that sentencing for a misdemeanor of the first degree shall be "not more than one hundred eighty days."

{¶ 53} Here, the trial court sentenced Marneros to 36 months on Count 1, a felony of the third degree. On Counts 2 and 3, felonies of the fourth degree, he was sentenced to 18 months. Last, on Count 4, a misdemeanor of the first degree, he was sentenced to 6 months. Each sentence was the maximum sentence permitted and all were within the statutory range. The record reflects the trial court also considered Marneros's extensive criminal history as well as his failure to appear for his first sentencing date. Just as in *Seith*, the trial court's sentencing journal entry specifically states that it "considered all required factors of law." *Seith,* 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 14. Therefore, we find the trial court's imposition of the maximum sentencing terms for Counts 1-4 are not contrary to law. Marneros's fifth assignment of error is overruled.

**{¶ 54}** Accordingly, the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR